UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>GEORGE WEGERS, et al.,<br><br>          Defendants. | CASE NO. CR05-0231C<br><br>ORDER |

This matter comes before the Court on Defendant Christopher Horlock's motion for revocation of a detention order and reinstatement of previously imposed conditions of release (Dkt. No. 445). Having carefully considered the papers submitted by the parties, as well as the transcript of the detention hearing and the existing detention order, and finding an additional evidentiary hearing unnecessary, the Court DENIES Defendant's motion for the following reasons.

I.  **Relevant Facts**

Defendant Christopher Horlock is charged in Count 6 of the First Superseding Indictment ("FSI") with a conspiracy to tamper with witnesses in violation of 18 U.S.C. §§ 1512(b)(3) and 1512(k). (FSI 19.) Defendant is alleged to be the Bandidos National Regional Secretary and President of the Rapid City Chapter in South Dakota. (*Id.* at 6.) In Count 6, Defendant is alleged to have received instructions by telephone from the National President to tell others Bandidos not to cooperate with

ORDER – 1

federal agents investigating a kidnapping. (*Id.* at 19.) There is no allegation in Count 6 that Defendant took any affirmative steps to carry out these instructions, but the government has made a proffer of evidence that Defendant "contacted other Bandidos National Officers and chapter presidents, as instructed by [the National President]." (Pl.'s Opp'n 2–3.)

As described in his motion, Defendant is 45 years old and married with three stepchildren. (Pl.'s Mot. 3.) He owns a self-service car wash and a "motorcycle shop," and has lived in South Dakota since July 2002. (*Id.*) He surrendered to the Marshals Service in Houston, Texas on June 14, 2005, and appeared for his detention hearing on June 16 before a magistrate judge in the Southern District of Texas. (*See* Def.'s Mot. 2.) The government alleges that because an ATF agent could not travel to testify at the detention hearing,[1] the Houston AUSA did not request detention. (Pl.'s Opp'n Ex. A, at 2.) The government further argues that it did not learn of this decision until after the detention hearing. (*Id.*)

In addition to the present federal charges, Defendant is on bond following state law charges of assault and felony property destruction in South Dakota. (*See* Pl.'s Mot. 3; Def.'s Opp'n Ex. A, at 1.) The parties agree that the pretrial services in Houston were aware of these charges and included them in their report before Defendant's detention hearing. (*See* Pl.'s Mot. 4; Def.'s Opp'n Ex. A, at 2.) However, the government disputes the extent to which the court in Houston was aware of the specific allegations underlying Defendant's state charges. (*See* Def.'s Opp'n Ex. A, at 2.)

Regardless, the outcome of the June 16 detention hearing in Houston was Defendant's release on a number of conditions, including Defendant's agreement not to contact any victim or witness associated with the federal charges. (Pl.'s Mot. 2.) The government does not dispute that Defendant complied with all conditions—or at least agrees that there is no evidence of a violation—during the two months he was released.

---

[1] It appears from the record that the courts in the Southern District of Texas require the testimony of a government agent in support of a motion for detention. (*See* Def.'s Mot. Ex. A, at 15–16.) This is not the practice in the Western District of Washington.

ORDER – 2

In early July, the lead prosecutors in Seattle claimed to have learned of Defendant's state charges for the first time. (Def.'s Mot. Ex. A, at 2.) After reviewing those police reports, the government filed a motion for detention. (*Id.*; Pl.'s Mot. 3.) Magistrate Judge Monica J. Benton conducted a hearing on August 25, 2005, attended by Defendant, his counsel, and the Seattle AUSAs in charge of this case.

At the hearing, the AUSA discussed the government's reasons for seeking Defendant's detention, particularly the seriousness of the witness-tampering charge, the Defendant's state-law charges of assault and drug possession, and his possession of a large number of weapons and ammunition. (*See* Def.'s Mot. Ex. 1, at 3–7.) The government concluded that its "predominant concern is the safety to the community," apparently relying in part on Defendant's "status as a national secretary [for the Bandidos OMO] and the fact that he can reach out to other people." (*Id.* 7.) The parties also argued at length regarding the circumstances of, reasoning behind, and deference due the decision by the magistrate judge in Houston to order Defendant's release. (*See id.* 10–16.) They also discussed the circumstances behind Defendant's assault and drug charges in South Dakota and the conditions of his release on bond. (*Id.* 18–19.) Defendant argued strenuously that the evidence presented thus far (in the form of a wiretap transcript, Def.'s Mot. Ex. 3) does not support the inference that Defendant agreed to carry out instructions to tamper with witnesses, and even less that he took any actions to do so. (*See* Def.'s Mot. Ex. 1, at 21–22.)

Following the hearing, Magistrate Judge Benton issued a detention order, relying on the allegations in the FSI and the government's proffer of evidence that Defendant had made telephone calls to other Bandidos after his call with the National President. (*See* Dkt. No. 307, at 2–3.) The detention order further described the underlying facts of Defendant's state charges from South Dakota:

> The facts of the assault and property destruction involve assault with a baseball bat; first to the car parked in front of defendant's driveway, and then against the driver and his father[,] who stepped in to prevent further assault against the son. . . . [in addition to] charges of possession of methamphetamine found in the defendant's bedroom shared with his wife—in their home shared with a 16 year-old daughter.

ORDER – 3

(*Id.* 3.) Returning to the federal charge, the order cited the "nature of this offense and the need to protect the witnesses' identit[ies]," as well as a perceived preference by Defendant not to abide by a no-contact provision. (*Id.* 4.) The order ultimately concluded that "there is no condition or combination of conditions that would reasonably assure that the defendant does not pose a danger to members of the public, largely due to the sophistication involved in the crime of racketeering and particularly the defendant's role as National Secretary, a role which carries with it great influence and access to members known and unknown." (*Id.* 5.)

## II.     Legal Analysis

Defendant seeks an order revoking Magistrate Judge Benton's detention order and reinstating the terms of release set by the Houston court. Under 18 U.S.C. § 3145(b), a defendant ordered detained by a magistrate judge may file with the district court a motion for revocation or amendment of the magistrate's detention order. "The motion shall be determined promptly" via the district court's *de novo* review of the entire record. *Id.*; *United States v. Koenig*, 912 F.2d 1190, 1191, 1193 (9th Cir. 1990) ("[The district court] should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference."). Thus, the Court must review the entire record to determine for itself whether the government has met its burden to show by clear and convincing evidence that "no condition or combination of conditions [of release] will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B).

The government's motion for detention appears to be based on "a serious risk that [Defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness." *Id.* In evaluating anew the government's motion, the Court must consider the factors laid out in § 3142(g), including the following: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against [Defendant]," (3) "[Defendant's] character, physical and mental condition, family ties, employment . . . past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and (4)

ORDER – 4

"the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(1)–(4).

Viewing the entire record in this matter in light of the statutory and legal authority above, the Court finds that the government has satisfied its burden under § 3142(f)(2)(B) to show by clear and convincing evidence that no combination of conditions would ensure the safety of the community were Defendant to be released. To be clear, the Court's decision is not based on Defendant's licensed possession of weapons, the presence of trace amounts of drugs in his home, or his mere association with the Bandidos organization. No one of those facts alone would be sufficient to justify his detention. Nor is the Court concerned about a risk of flight given Defendant's apparent ties to family, community, and businesses in South Dakota.

Rather, the Court's decision is driven by (1) "the nature and circumstances of the offense charged," (2) Defendant's "past conduct," and (3) "the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(1), (3), (4). Indications in the record of Defendant's penchant for aggressive confrontation are particularly relevant given the nature of the witness-tampering charges here. Defendant is alleged to be a high-ranking officer with the capacity to carry out the alleged tampering instructions using no more than his access to other Bandidos members via any telephone. Such activity may be difficult to detect notwithstanding Defendant's agreement to a no-contact condition. Under these circumstances, the Court finds that detention would avoid "a serious risk that [Defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness." 18 U.S.C. § 3142(f)(2)(B). In doing so, the Court makes no findings as to whether the evidence and proffers against Defendant would be sufficient for any purpose other than this detention motion.

//

//

ORDER – 5

Accordingly, Defendant Horlock's motion for revocation of the detention order is DENIED.

SO ORDERED this 21st day of October, 2005.

_____
UNITED STATES DISTRICT JUDGE

ORDER – 6